# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=================================

## ON MOTION FOR REHEARING EN BANC

=================================

## NO. 03-04-00220-CV

### Bradford E. Larimore, Appellant

### v.

### Employees Retirement System of Texas, Appellee

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN302090, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

## O P I N I O N

We withdraw the prior opinion and judgment dated January 20, 2006, and the following opinion is substituted.

Larimore appeals the judgment of the district court, which affirmed a final order by the Employees Retirement System of Texas Board of Trustees (the "Board") denying his application for occupational disability benefits.[1] In four issues on appeal, Larimore contends that the Board

---

[1] We will refer to several entities throughout this appeal. The "Board" refers to the agency's board of trustees, which hears appeals of contested cases. *See* Tex. Gov't Code Ann. § 815.511 (West 2004). The "Medical Board" refers to the agency's medical board, which certifies

erred in adopting findings of fact and conclusions of law different from the ones proposed by the administrative law judge ("ALJ"), that the Board's order was not supported by substantial evidence, and that he is entitled to attorney's fees and costs of court. We will affirm the judgment of the district court.

## BACKGROUND

Larimore was employed by the Texas Department of Corrections as a corrections officer. In December 1998, as he was going up a flight of stairs in a corrections unit, Larimore slipped on the stairs and "did the splits" but was able to grab the handrail and prevent himself from falling down the stairs. He pulled himself up and claims he immediately felt pain in his lower and upper back. As a result of the slip, Larimore sustained an injury to his back. Larimore was ultimately diagnosed as suffering from radiculopathy (pain radiating into his extremities resulting from the back injury) and from disc protrusions or herniations in his cervical spine at vertebrae C4-5 and in his lumbar spine at vertebrae L3-4 and L4-5. Larimore applied to the Employees Retirement System ("ERS") for occupational disability retirement benefits.[2] *See* Tex. Gov't Code Ann. §§ 811.001-815.512 (West 2004).

---

occupational disability retirement claimants as disabled. *See id.* §§ 814.203 (West 2004) (providing that Medical Board issue certification of disability if it "finds that the member is mentally or physically incapacitated for the further performance of duty and that the incapacity is likely to be permanent"); 815.204(c) (West 2004) (Medical Board shall report its conclusion and recommendation to executive director). We will refer to "ERS staff" to mean the agency's representatives at the administrative hearing before the State Office of Administrative Hearings.

[2] ERS provides four types of benefits for eligible state employees: service retirement, occupational disability retirement, nonoccupational disability retirement, and death benefits. *See* Tex. Gov't Code Ann. § 814.001 (West 2004).

Larimore's application for benefits was governed by former section 811.001(12) of the government code, which defined an occupational disability as a disability arising "from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place and directly results from a risk or a hazard peculiar to and inherent in a duty that arises from and in the course of state employment." *See* Act of May 23, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827; Act of May 24, 2003, 78th Leg., R.S., ch. 842, § 4, 2003 Tex. Gen. Laws 2633, 2636 ("former Tex. Gov't Code § 811.011(12)"). The Medical Board certified that Larimore was permanently impaired and unable to further perform his job requirements due to cervical, thoracic, and lumbar spondylosis (degeneration of the spine). *See* Tex. Gov't Code Ann. § 814.203. The Medical Board also concluded that the injury he sustained at the Stevenson unit was not the primary cause of Larimore's incapacity. Rather, the Medical Board concluded Larimore's incapacity resulted from a pre-existing condition suffered in an automobile collision[3] and from arthritis. It concluded that the most recent injury aggravated the pre-existing condition and would not, on its own, have rendered Larimore permanently incapacitated.

The ERS Executive Director denied Larimore's application for benefits on the grounds that Larimore's injury did not satisfy the requirements specified in former government code section 811.001(12). The Executive Director stated that, based on the conclusions of the Medical Board, "ERS is unable to conclude that [Larimore's] disability directly results from a specific act or

---

[3] Larimore was involved in an automobile collision in 1986. As a result of the collision, Larimore had recurring problems with his neck, which ultimately resulted in Larimore having surgery on his neck and in the removal of two herniated discs from his cervical spine.

occurrence determinable by a definite time and place" as required by statute. Larimore appealed the decision of the Executive Director to the Board, and a hearing was held before an ALJ. *See* Tex. Gov't Code Ann. §§ 815.001, .101 (stating Board is responsible for general administration of retirement system). In her proposal for decision, the ALJ recommended that Larimore's appeal be granted, that he should be awarded disability benefits, and that the evidence indicated that the at-work injury was the primary cause of Larimore's disability.

After the ALJ issued her proposal, ERS Staff filed a list of exceptions to the proposal and subsequently filed alternative findings and conclusions, which were ultimately adopted by the Board. The Board determined that Larimore did not prove that the injury he sustained from his fall was the primary cause of his disability. In its order, the Board denied Larimore's claim for occupational disability retirement benefits and adopted the alternate findings and conclusions submitted by ERS staff.[4]

Larimore appealed to the district court, which affirmed the decision of the Board. *See* Tex. Gov't Code Ann. § 815.511(f) (allowing aggrieved party to appeal decision to district court for judicial review under substantial evidence review). This appeal followed.

**DISCUSSION**

On appeal, Larimore contends that (1) the Board erred by adopting the alternative findings and conclusions proposed by ERS staff; (2) the Board's order was not supported by

---

[4] *See* Tex. Gov't Code Ann. § 815.511(d) (West 2004) (authorizing Board to change or delete findings of fact and conclusions of law contained in proposal issued by ALJ and to make alternative findings and conclusion but requiring Board to state in writing its specific reasons for changes); 34 Tex. Admin. Code § 67.91 (b) (2005) (requiring written explanation for changes and limiting circumstances in which modifications are appropriate).

4

substantial evidence; (3) the Board did not have the authority to reject the findings and conclusions in the ALJ's proposal because they were supported by substantial evidence; and (4) the district court erred by not allowing him to recover attorney's fees, costs of court, and interest.

**Alternative Findings and Conclusions**

In his first issue on appeal, Larimore contends the Board erred in adopting the findings and conclusions proposed by the ERS staff because (1) none of the requirements of section 67.91(b) of title 34 of the administrative code were met; (2) the Board abused its discretion; (3) the Board acted arbitrarily and capriciously; (4) the Board breached its fiduciary and contractual duties in light of previous cases before this Court; and (5) the Board's actions were legally reprehensible and actionable.

Larimore contends that the at-work injury was the primary cause of his disability; that, prior to his injury, he had been able to perform all of his job responsibilities and was not disabled; and that prior to the accident there was no evidence of an injury to his lumbar spine, particularly the disc protrusions or herniations of vertebrae L3-4 and L4-5.

The legislature has limited the discretion of the Board to modify recommendations of an ALJ in a contested case hearing by enacting section 815.511 of the government code. Although the code specifically grants the Board the power to "modify, refuse to accept, or delete any proposed finding of fact and conclusion of law contained in a proposal for decision submitted by an [ALJ]," the statute requires the Board to state its reasoning for the changes in writing and allows the Board to adopt rules governing its review of contested case hearings. Tex. Gov't Code Ann.

5

§ 815.511(d). The Board's rules further guide the Board's discretion. *See* 34 Tex. Admin. Code § 67.91(b). The Rules permit the Board to:

> modify or delete any proposed finding of fact or conclusion of law, or make alternative findings of fact or conclusions of law, if it determines that the proposal for decision submitted by the examiner, or a proposed finding of fact or conclusion of law contained therein, is:
>
> (1) clearly erroneous or illogical;
>
> (2) is against the weight of the evidence;
>
> (3) is based on misapplication of the rules of evidence or insufficient review of the evidence;
>
> (4) is inconsistent with the terms or intent, as determined by the board, of benefit plan or insurance policy provisions; or
>
> (5) is not sufficient to protect the public interest, the interests of the plans and programs for which the board is trustee, or the interests, as a group, of the participants covered by such plans and programs. The order shall contain a written statement of the reason and legal basis for each change made based on the foregoing policy reasons.

*Id.* Under these rules, the Board may not modify, delete, or add findings of fact and conclusions of law merely because the Board disagrees with the ALJ; the Board's changes must be justified under the rule with its reasons stated in writing. *See id.*

Our review of the Board's findings of fact and conclusions of law focuses on whether the Board's stated reasons for modifying the proposal were consistent with its discretion under section 815.511 of the government code and section 67.91 of title 34 of the administrative code. An ALJ's findings of fact, even adjudicative facts, are not completely insulated from review by the Board. While it is not the Board's function to reweigh the evidence and change adjudicative facts

6

after a hearing before an ALJ, the Board may change adjudicative facts if they are improper under rule 67.91(b). *Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532, 551 (Tex. App.—Austin 2002, pet. denied).

The burden of establishing entitlement to disability benefits is on the applicant. *Id.* at 550. In describing this burden, this Court has explained:

> [A]n employee seeking occupational disability retirement benefits must establish that a specific act or occurrence determinable by a definite time and place is the cause-in-fact of her disability, namely, that the injury in a natural and continuous sequence produced the disability, and that without it, the disability would not have occurred. Moreover, the employee must prove that the at-work injury is the primary cause of the disability. A preexisting condition that becomes symptomatic only at the time of trauma or that does not primarily cause the disability does not break the causal chain between the at-work injury and the disability. This is true even if a preexisting condition makes the injury more difficult to treat or more disabling. A preexisting condition that substantially contributes to a disability, however, such that the preexisting condition is the primary cause of the disability, will defeat a claim for occupational disability retirement.

*Id.* (citations omitted). When there are preexisting mental or physical conditions, the claimant must establish that the traumatic incident is the primary cause of the disability. *Langford v. Employees Ret. Sys. of Tex.*, 73 S.W.3d 560, 567 (Tex. App.—Austin 2002, pet. denied). If the medical evidence establishes that a preexisting condition is the primary cause of incapacity, the disability does not directly result from a specific act or occurrence determinable by a definite time and place. *Id.*

While acknowledging that claimants carry the burden of proving their injury was the primary cause of their disability, Larimore contends that the Board, if it chooses to contest the claim, has the burden of proving something else was the sole cause of the disability. Further, Larimore

7

contends that the extent and nature of a preexisting condition is irrelevant and contends that consideration of whether the injury would have caused a permanent disability in a healthy individual is also irrelevant. Finally, Larimore asserts that it does not matter if the issue is framed as proximate cause, direct cause, or primary cause; rather, all that matters is whether the last injury produced the disability, in which case the claimant is entitled to whatever "benefits flow from that injury."

We disagree with contentions that challenge our discussion of the claimant's burden in *Flores* and *Langford*. The burden is on the claimant to prove the work injury is the primary cause of his injury. *Flores*, 74 S.W.3d at 550; *Langford*, 73 S.W.3d at 567. If the burden is not met, the claimant is not entitled to receive disability benefits. In addition, denying a claimant coverage because of a preexisting condition is proper if the preexisting condition, even an asymptomatic condition, is the primary cause of the disability. *Flores*, 74 S.W.3d at 550.

In support of her ultimate recommendation that Larimore's disability directly results from a specific act or occurrence determinable by a definite time and place, the ALJ refers to the testimony of Dr. Swann, a neurosurgeon who treated Larimore for years and who performed surgery on Larimore's neck after Larimore was injured in an automobile collision in 1988. Dr. Swann testified that Larimore had never had lower back problems nor complained of lower back problems prior to the at-work injury and testified that the fall was the "primary precipitant of the symptoms [Larimore] had in his lower back." In addition, Dr. Swann stated that, were it not for the at-work injury, Mr. Larimore would probably still be able to work as a corrections officer. Dr. Swann further opined that the condition of Larimore's lumbar spine would be disabling even if Larimore did not have a preexisting cervical degeneration condition. Finally, Dr. Swann testified that he believed

8

Larimore's preexisting degenerative condition was not the primary cause of his disability but was a "contributing factor that made him more susceptible to the injury."

The ALJ also referred to various medical reports. Although noting that the record "clearly documents Mr. Larimore's preexisting cervical degeneration condition," the ALJ stated that there are no treatment records or MRIs of Larimore's lumbar spine until after the accident and that a CAT scan conducted after Larimore slipped on the stairs showed disc herniations in Larimore's lumbar spine. While acknowledging that Larimore had stated in a medical questionnaire that he experienced lower back pain in 1996 due to a previous incident at work, the ALJ concluded that Larimore's lumbar spine was asymptomatic prior to the at-work injury based on Larimore's testimony that he was mistaken when he filled out the questionnaire and that he had never experienced any difficulties in his lower back until the at-work injury, based on Larimore's supervisor's testimony that Larimore had never complained of lower back pain until after the at-work injury, and based on Larimore only receiving treatment on his cervical spine prior to the at-work injury. Finally, the ALJ referenced the results of an MRI of Larimore's cervical spine conducted over a year before the injury occurred. The MRI indicated Larimore had only very mild to mild degeneration in his spine and did not indicate the presence of stenosis (the presence of a small nerve passageway).

The Board did not agree with the recommendation of the ALJ and adopted alternative findings and conclusions proposed by ERS staff. The alternate findings and conclusions referred to evidence presented through testimony and in Larimore's medical records as justification for modifications to the ALJ's findings and conclusions and cited to the specific provisions of the

9

government code and the administrative code that authorize the Board to make such changes. Specifically, the new findings and conclusions state the modifications were made pursuant to section 815.511(a) of the government code and section 67.91(b)(1), (2), and (3) of the administrative code because the original findings were "clearly erroneous, against the weight of the evidence and based on an insufficient review of the evidence." Similarly, conclusions (4) and (7) were modified under section 67.91(b)(4) and (5) of the administrative code because the original conclusions were "inconsistent with the terms or intent of the occupational disability retirement plan" and were "not sufficient to protect the interests of the plan or the interests of the participants who are covered by the plan."

The following list contains the alternate findings of fact and conclusions of law that were adopted by the Board. For each finding and conclusion, the stricken language shows portions that were removed from the original findings and conclusions proposed by the ALJ, and the underlined language shows additions that were made by the ERS staff:

Findings of Fact

10. As shown by a 1999 Myelogram/CT examination, Mr. Larimore has disc herniations at the L3-4 and L4-5 level of the lumbar spine [~~caused by his at work injury~~].

    . . . .

14. Prior to the at-work injury Mr. Larimore's preexisting conditions were [a]symptomatic; he [~~never~~] experienced [~~any~~] pain in his lumbar spine in 1996 which he reported to his treating physician, Dr. Swann, in writing on October 26, 1999[~~, nor did he receive any treatment~~]

15. Mr. Larimore's preexisting degenerative conditions in his lumbar spine were substantial contributing factors in causing Appellant's incapacity and worsened

the effects of the at-work injury on his lumbar spine[, but were not primarily responsible for his disability].

16. Mr. Larimore's disability does not directly result[s] from a specific act or occurrence determinable by a definite time and place.

Conclusions of Law

4. Mr. Larimore's disability does not result[s] from a specific act or occurrence determinable by a definite time and place . . . .

5. The at-work injury was not the primary cause of Mr. Larimore's disability.

. . . .

7. Mr. Larimore's application for occupational disability benefits should not be granted.[5]

In support of the modifications, the proposed findings and conclusions adopted by the Board refer to Larimore's medical records and to the depositions of Larimore and various doctors. First, the alternate proposal cites to statements by Dr. Swann that, in addition to the at-work injury, there were other causes of Larimore's disability, including preexisting degenerative changes not resulting from the at-work injury and congenital stenosis, which were aggravated by the at-work injury and made him more susceptible to disc herniation. Dr. Swann also testified that stenosis can

---

[5] The Board also adopted additional findings and conclusions relating to the second portion of the definition of an occupational disability listed in former section 811.001(12). To be awarded benefits, a claimant had to satisfy both prongs of former section 811.001(12). *See Broadhurst v. Employees Ret. Sys. of Tex.,* 83 S.W.3d 320, 322 (Tex. App.—Austin 2002, pet. denied); *Langford*, 73 S.W.3d at 564. The second prong requires that the disability "directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment." Former Tex. Gov't Code Ann. § 811.001(12). Because we conclude that the Board did not err by changing the findings and conclusions relating to the first prong, we need not address the Board's changing of the findings and conclusions addressing prong two.

11

make a person more prone to suffer from radiculopathy and added that the at-work injury would not have rendered Larimore incapacitated in the absence of Larimore's preexisting spinal degeneration.[6]

Dr. Swann testified that Larimore probably had degeneration in his lumbar spine before being injured at work; that Larimore probably had more degeneration than would be expected for his age; and that Larimore's degeneration made him more susceptible to the injury he sustained. Dr. Swann also stated that the degeneration was a significant factor contributing to Larimore's disability. Dr. Swann further opined that Larimore was suffering from arthritic changes to his lumbar spine, which occurred over a prolonged period of time and were not caused by his at-work injury. Finally, Dr. Swann testified that Larimore's incapacitating lumbar radiculopathy was caused by a number of factors, including the disc herniations, degenerative changes, and congenital and acquired stenosis.

Regarding Larimore's cervical spine, Dr. Swann testified that the two cervical discs he removed from Larimore's spine in 1988 were degenerated and that a person with degeneration in one part of his spine commonly has degenerative changes in other parts of the spine as well. Dr. Swann further commented that he fused some of the vertebrae in Larimore's cervical spine in 1988 and that fusing vertebrae renders the adjacent vertebrae more susceptible to injury. Dr. Swann also stated that Larimore had degeneration of his cervical spine at the time Larimore was injured at work and that degenerative changes in Larimore's neck contributed to Larimore's cervical disc herniation sustained after the at-work injury.

---

[6] The Medical Board agreed that, in the absence of Larimore's pre-existing condition, the injury he sustained would not have been disabling.

12

The alternate proposal also refers to Larimore's medical records. First, it cites to the medical questionnaire filled out by Larimore indicating that he experienced lower back problems two years before his at-work injury and to testimony by Larimore in which he stated that he tried to provide complete and accurate information on the questionnaire because he filled out the questionnaire for the purpose of obtaining medical treatment for his back. The alternate proposal also refers to medical reports written before and after the 1998 injury indicating Larimore's cervical spine had degenerated and to medical reports and MRI results indicating Larimore's lumbar spine had arthritic changes, degeneration, and mild congenital stenosis. Finally, the alternate proposal cites to Dr. Swann's notes taken in 2001 referring to multiple levels of degernative change in Larimore's spine, including his lumbar area, and to congenital stenosis present in Larimore's lumbar spine especially at vertebrae L4-5 and L3-4.

Based on this evidence, we cannot conclude that the Board abused its discretion in determining that the original findings and conclusions were against the weight of the evidence and in modifying the relevant findings and conclusions accordingly. *See* 34 Tex. Admin. Code § 67.919(b)(2). In addition, the alternate proposal provided statements containing the reasoning and legal basis upon which the modifications were made. *See* Tex. Gov't Code § 815.511; 34 Tex. Admin. Code § 67.91(b). Accordingly, we conclude that the Board's actions were within its statutory authority and satisfied the statutory and rule requirements for modification of an ALJ's proposal.[7]

---

[7] Because we have concluded that the Board complied with the requirements of section 67.91(b)(2) of title 34 of the administrative code, we need not address Larimore's claims that the Board's order did not satisfy subsections (1), (3), (4), and (5). *See* Tex. Admin. Code § 67.91(b).

13

Larimore also contends that the Board's actions did not comply with previous decisions issued by this Court. Specifically, Larimore cites to *Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532 (Tex. App.—Austin 2002, pet denied) and to *Langford v. Employees Ret. Sys. of Tex.*, 73 S.W.3d 560 (Tex. App.—Austin 2002, pet. denied), in which we concluded the Board improperly modified the proposals issued by the ALJs. Flores was permanently disabled after being involved in a motor vehicle collision. *Flores*, 74 S.W.3d at 537. Langford slipped and fell on the kitchen floor of a correctional facility and was permanently disabled. *Langford*, 73 S.W.3d at 563-64. In both cases, the ALJs recommended awarding disability benefits, but the Board modified the ALJs' proposals and denied benefits to both Flores and Langford. *Flores*, 74 S.W.3d at 538-39; *Langford*, 73 S.W.3d at 564.

These cases are distinguishable. Although both Langford and Flores suffered from pre-existing spinal degeneration that contributed to their incapacitation, their doctors testified that the amount of degeneration they had was common in people of their age. *Flores*, 74 S.W.3d at 540-41; *Langford*, 73 S.W.3d at 568. Neither Langford nor Flores had reported problems with their backs prior to the at-work injuries. *See Flores*, 74 S.W.3d at 541; *Langford*, 73 S.W.3d at 568, 570. Further, Langford's doctor testified that the injury Langford suffered at work would have been disabling even without the pre-existing degeneration. *Langford*, 73 S.W.3d at 568. In addition, the ERS staff in this case cited to evidence supporting their alternative findings and conclusions. *See id.* at 568, 570 (medical board did not refer to evidence supporting its conclusion that was different from ALJ's).

In this case, Larimore had reported problems with his lower back prior to the at-work injury, had repeated problems with his cervical spine prior to the injury, and had more degeneration in his spine than would be expected for someone his age. Further, both Dr. Swann and the Medical Board agreed that the injury Larimore sustained at work would not have been disabling without his preexisting condition.

In addition, in *Flores,* the Board did not comply with rule 67.91 because it did not give reasons for some of the alterations made to the proposal and because the reasons given for other modifications, e.g., for clarification and because the finding was irrelevant, were not allowed under rule 67.91. *Flores*, 74 S.W.3d at 542. In the present case, the bases for modification stated by the Board were authorized under rule 67.91 and were fully explained.

Further, this Court's approval of the Board's refusal to adopt the ALJ's proposal in *Broadhurst v. Employees Ret. Sys. of Tex.*, 83 S.W.3d 320 (Tex. App.—Austin 2002, pet. denied), is instructive. In that case, the ALJ recommended awarding Broadhurst retirement benefits, but the Board did not adopt the ALJ's proposal and issued an order denying Broadhurst benefits. *Id.* at 322. This Court affirmed the decision of the Board, finding there was evidence in the record demonstrating a reasonable basis for the Board's conclusion that Broadhurst did not qualify for retirement benefits. *Id.* at 325-26.

We conclude that the Board's actions complied with the governing statute and rule. Accordingly, we overrule Larimore's subissues arguing that the Board's actions were an abuse of discretion and power, arbitrary and capricious, breaches of fiduciary and contractual obligations to employees who are members of ERS, and legally actionable.

15

Larimore also argues he was denied due process because the Board was predisposed to deny Larimore disability benefits. In addition, Larimore contends he was impermissibly denied benefits because of a preexisting condition. In support of this argument, Larimore points to the recommendation of the Medical Board, the list of exceptions filed by ERS staff, and the alternative findings and conclusions proposed by ERS staff, all of which recommended denying him benefits. Larimore contends that the positions taken in these various proposals did not comport with our decisions in *Flores*, *Langford*, and *Broadhurst* and did not properly account for the supreme court's decision to deny petition for review in these cases. Rather, Larimore contends the recommendations of the Medical Board and the ERS Staff were made under the Board's policy existing prior to the *Flores* decision that required an employee to establish that "'an occupational trauma is the direct cause of the [employee's] disability without regard to a preexisting mental or physical condition.'" *See Flores*, 74 S.W.3d at 543. This Court rejected the Board's previous policy because the policy would prohibit employees with preexisting conditions from receiving benefits even if the at-work injury is the primary cause of the disability. *Id.* at 548.

The list of exceptions filed by ERS staff asserted that Larimore did not satisfy his burden of showing that the at-work injury was the primary cause of his disability and asserted that a claimant was required to prove the disability under the standard adopted by the Board prior to our decision in *Flores*. However, the alternative findings and conclusions, the Board's order, and the Medical Board's recommendation do not mention the Board's prior interpretation of section 811.001(12). Further, evidence was referenced in the alternative findings and conclusions to show

that Larimore was not entitled to benefits because his preexisting condition was the primary cause of his disability. Finally, the modifications satisfied the statutory and rule requirements and the requirements specified in *Flores*. *See* Tex. Gov't Code Ann. § 815.511(d); 34 Tex. Admin. Code § 67.91(b); *Flores*, 74 S.W.3d at 551. We conclude Larimore was not denied due process and was not impermissibly denied benefits due to a preexisting condition. Therefore, we overrule Larimore's first issue on appeal.

**The Board's Order was Supported by Substantial Evidence**

In his second issue on appeal, Larimore asserts the findings and conclusions adopted by the Board were not supported by substantial evidence or any evidence at all. In a substantial-evidence review, we may not substitute our judgment for that of the agency on matters committed to agency discretion. Tex. Gov't Code Ann. § 2001.174 (West 2000); *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, 36 S.W.3d 597, 602 (Tex. App.—Austin 2000, pet. denied). Under a substantial-evidence review, we presume that the agency's order is supported by substantial evidence, and the appellant has the burden of overcoming this presumption. *Graff Chevrolet Co., Inc. v. Texas Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied). The administrative procedure act gives reviewing courts the authority to "test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id.*; *see* Tex. Gov't Code Ann. § 2001.174(2)(E). Courts must affirm administrative findings in contested cases if there is more than a scintilla of evidence to support them. *Broadhurst,* 83 S.W.3d

17

at 324. Even if the record evidence preponderates against the agency's decision, the evidence may still be enough to satisfy a substantial-evidence review. *Graff*, 60 S.W.3d at 159. However, the agency may not act arbitrarily and without regard to the facts. *H.G. Sledge*, 36 S.W.3d at 602.

A substantial-evidence review does not require us to conclude the agency reached the correct conclusion; rather, substantial-evidence review is satisfied if "some reasonable basis exists in the record for the agency's action." *Graff*, 60 S.W.3d at 159. An agency's actions will be upheld if "the agency's action is such that reasonable minds could have reached the conclusion the agency must have reached in order to justify its action." *Id.* If a finding is properly supported and supports the agency's action, the court will uphold the agency's action despite the presence of irrelevant or unsupported findings in the agency's order. *Texas Rivers Prot. v. Texas Natural Res. Conservation Comm'n*, 910 S.W.2d 147, 155 (Tex. App.—Austin 1995, writ denied).

In addition to the evidence listed under issue one, there was additional testimony given by Dr. Swann supporting the Board's position. Dr. Swann testified that Larimore had an ongoing, degenerative condition prior to the 1998 fall. In addition, Dr. Swann stated that Larimore was suffering from ligamentum flavum hypertrophy, which occurs over a substantial period of time and can narrow the spinal canal and result in radiculopathy. Finally, Dr. Swann noted that Larimore had a calcium build up, or an osteophyte, in his cervical spine in 1988 caused by degeneration, that the presence of one osteophyte in one part of the spine indicates there might be others in other parts of the spine, and that osteophytes can cause radiculopathy if they occur in certain locations. Similarly, a CAT scan conducted on Larimore in 1999 indicated the presence of osteophytes in his

cervical spine.  Finally, the Medical Board concluded that Larimore's disability was caused by the aggravation of preexisting spinal degeneration.[8]

We conclude that a reasonable basis existed in the record for the Board's conclusion that Larimore's at-work injury was not the primary cause of his disability, that the findings and conclusions regarding the first prong of former section 811.001(12) properly support the Board's action, and that the Board's order and the relevant findings and conclusions were supported by substantial evidence.  Therefore, we overrule Larimore's second issue on appeal.

**The ALJ's Findings and Conclusions**

In his third issue, Larimore asserts that the findings and conclusions of the ALJ were supported by substantial evidence, and, therefore, the Board did not have the authority to reject the ALJ's findings and conclusions.  In support of this argument, Larimore cites to *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559 (Tex. 2000).  In *Montgomery*, the school district decided not to renew Davis's teaching contract.  *Id.* at 560.  An independent hearing examiner heard Davis's appeal and concluded the district failed to prove the reasons for nonrenewal.  *Id.* at 561.  The Board of Education rejected the conclusion of the hearing examiner and made additional findings of fact.  *Id.*

---

[8]  Larimore contends that the opinion of the Medical Board, to the extent that it is a conclusion of law rather than a medical opinion, should be ignored because it was not based on a review of Larimore's medical records or on personal knowledge.  The opinion of the Medical Board is not binding or entitled to deference, but the opinion may be considered in our review of the evidence supporting the decision of the Board as it is relevant.  *See* Tex. Gov't Code Ann. §§ 815.511(f) (allowing judicial review of Board's decision under substantial evidence review); 2001.174(E) (West 2000) (allowing reviewing court to reverse finding or conclusion of agency if not supported by substantial evidence considering evidence in record as a whole).

at 562.  The governing statute allowed the Board to reject or change the hearing examiner's finding of fact only if the finding was not supported by substantial evidence.  *Id.* at 563.  The court noted that the governing statute imposed stricter requirements on the Board of Education than the Administrative Procedure Act imposes on other state agencies.  *Id.* at 565.

Under this statute, the Board's ability to modify, change, or propose alternative findings and conclusions is not restricted to circumstances where the findings and conclusions are not supported by substantial evidence.  *See* Tex. Gov't Code Ann. § 815.511; 34 Tex. Admin. Code 67.91(b); *Flores*, 74 S.W.3d at 541-42.  Section 67.91 of title 34 of the administrative code allows the Board to modify, change, or alter the findings of the ALJ if at least one of five criteria is met.  34 Tex. Admin. Code § 67.91(b).  We have already concluded that the Board's actions in modifying the ALJ's findings and conclusions complied with the governing statute and rule.  Accordingly, we overrule Larimore's third issue on appeal.

**Sanctions**

In his final issue on appeal, Larimore asserts that the district court erred by not allowing him to recover attorney's fees, court costs, and interest.  Specifically, Larimore contends that, because the Board failed to comply with its statutorily imposed duties, he is entitled to sanctions for the Board's abuse of its discretion.  However, because we have concluded that the Board properly modified the ALJ's findings and conclusions and properly determined Larimore was not entitled to disability benefits, we need not address Larimore's final issue.  Accordingly, we overrule his final issue on appeal.

## CONCLUSION

Because we have overruled all of Larimore's issues on appeal, we will affirm the judgment of the trial court affirming the order of the Board.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Kidd, B. A. Smith, Patterson, Puryear, Pemberton and Waldrop;
    Justice Kidd Not Participating

Affirmed

Filed:   March 24, 2006