# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-15-00325-CV
---

**Texas Health and Human Services Commission, Appellant**

**v.**

**Jessica Lukefahr, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-14-002158, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

The Texas Health and Human Services Commission (HHSC) appeals from the trial court's judgment reversing the fair hearing decision that sustained HHSC's denial of Jessica Lukefahr's exceptional circumstances request for a custom power wheelchair with an integrated standing feature and remanding the matter to HHSC. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

Lukefahr was born with cerebral palsy and has spastic quadriplegia with dystonia. She lives independently, requires a custom power wheelchair for mobility, and receives assistance with activities of daily living (ADLs) from care providers several hours per day. In January 2013, she was evaluated for a new custom power wheelchair, and, based on the results of that evaluation, David Russell of Russell Medical, Inc., a Medicaid-enrolled provider of durable medical equipment

(DME), submitted to HHSC a prior authorization request for a custom power wheelchair with an integrated standing feature known as the Permobil C500 VS.[1] *See* 1 Tex. Admin. Code §§ 357.1(31) (2016) (Texas Health and Human Servs. Comm'n, Definitions)[2] (defining "prior authorization request" as request for services that is reimbursable only if authorization is obtained before services are rendered), 354.1031(b)(12) (General) (defining "durable medical equipment" as equipment for which projected term of use is more than one year or for which reimbursement is made at cost of more than $1,000). Lukefahr's physician attested to the medical necessity of the recommended wheelchair. The Texas Medicaid and Healthcare Partnership (TMHP), which administers Texas Medicaid on behalf of HHSC, denied prior authorization on the basis that, under section 2.2.14.26 of HHSC's 2013 Texas Medicaid Provider Procedures Manual, "mobile standers, power standing system on a wheeled mobility device" are not a benefit of Texas Medicaid.

In denying the request, TMHP informed Russell, the DME provider, that the request could be appealed for exceptional circumstances. *See id.* § 354.1039(a)(4)(C) (Home Health Services Benefits and Limitations) (listing items covered under home health services benefits), (D) (providing that medical equipment not listed in (C) may be considered for payment in "exceptional circumstances" when it can be "medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis"). TMHP further informed Russell that certain documentation had to be submitted for the exceptional circumstances

---

[1] HHSC is the state agency designated to administer the Texas Medicaid program. *See* Tex. Gov't Code § 531.021(a); Tex. Hum. Res. Code § 32.021(a).

[2] All cites to Title 1 of the Texas Administrative Code are to current rules promulgated by HHSC.

appeal to be considered, including identification of the client's specific medical needs that can only be addressed by the requested equipment; a letter of medical necessity documenting that alternative DME had been tried and failed or had been ruled out, and an explanation of why it failed or was ruled out; and "[a] minimum of two articles from evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the equipment has been found to be safe and effective."

Russell subsequently submitted a request for an exceptional circumstances review and provided the requested documentation, including a Letter of Medical Necessity Addendum signed by Lukefahr's physician and by Michelle Hays, Lukefahr's physical therapist, explaining Lukefahr's medical and functional needs. TMHP determined that the documentation Lukefahr and Russell submitted failed to support the medical necessity of the standing feature of the power wheelchair or that the standing feature would serve a medical purpose for Lukefahr and recommended denial of the request for the Permobil C500 VS. HHSC's Office of Medical Director approved the recommendation. TMHP notified Lukefahr and Russell of the denial and also informed Lukefahr that the documentation showed that she may have a medical need for a power wheelchair without a standing feature and a static stander and stated that such equipment may be considered for her through Texas Medicaid if requested.[3]

Lukefahr then requested a fair hearing regarding the exceptional circumstances denial. *See id.* §§ 357.1(19) (defining "fair hearing" as informal proceeding held before impartial

---

[3] A static stander is a separate unit of equipment that is not readily transportable and therefore cannot be used to move about the home or taken into the community.

3

HHSC hearings officer); .3(b)(E) (Authority and Right to Appeal) (providing that clients of Medicaid-funded services are entitled to fair hearing on denial of prior authorization). At the fair hearing, HHSC had the burden of proof by a preponderance of the evidence. *See id.* § 357.9 (Burden of Proof in a Fair Hearing). Two registered nurses testified on behalf of HHSC. Lukefahr, her physical therapist, Hays, and her DME provider, Russell, testified as well. Both parties offered documentary evidence. Following the hearing, the hearing officer issued an order sustaining HHSC's denial of the exceptional circumstances request and a decision with findings of fact and a single conclusion of law. *See id.* § 357.5(c)(3)(B) (Hearing Officer Responsibilities) (requiring hearing officer to determine if agency's or its designee's action is in compliance with statutes, polices, and procedures), (D) (requiring hearing officer to issue decision including findings of fact and conclusions of law, pertinent statutes, and final order).

Lukefahr requested an administrative review, after which an HHSC attorney upheld the hearing officer's decision and issued a final agency decision adopting the hearing officer's findings of fact and conclusion of law. *See id.* §§ 357.702 (Definitions) (defining "administrative review" as desk review performed by HHSC attorney), .703(b) (Process and Timeframes) (providing process and timelines for administrative review, including that in administrative review, attorney makes final decision for HHSC). Lukefahr then filed suit for judicial review. *See id.* § 357.703(c) (providing for judicial review of decision adverse to appellant). The trial court found that HHSC violated Lukefahr's due process rights and that the decision denying her a custom wheelchair with an integrated standing feature was not supported by substantial evidence and was arbitrary and capricious. HHSC then filed this appeal.

4

## STANDARD OF REVIEW

In its review of an agency's decision, the trial court "may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion" but must instead review the decision under the "substantial evidence" standard. *See* Tex. Gov't Code § 2001.174. A reviewing court should ask not whether the agency reached the correct conclusion but whether the record contains sufficient evidence to support the agency's action. *Larimore v. Employees Ret. Sys.*, 208 S.W.3d 511, 522 (Tex. App.—Austin 2006, pet. denied). However, the agency may not act arbitrarily or capriciously. *See id.* An agency acts arbitrarily and capriciously if it makes a decision without regard for the facts, relies on fact findings that are not supported by any evidence, or if there is no rational connection between the decision and the facts. *See City of Waco v. Texas Comm'n on Envtl. Quality*, 346 S.W.3d 781, 819–20 (Tex. App.—Austin 2011), *rev'd on other grounds*, 413 S.W.3d 409 (Tex. 2013). An agency decision may be found arbitrary and capricious if it is based on legally irrelevant factors or if legally relevant factors were not considered. *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 184 (Tex. 1994); *CenterPoint Energy Hous. Elec., LLC v. Public Util. Comm'n*, 212 S.W.3d 389, 400 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.). "To determine if an agency acted arbitrarily and capriciously, even though substantial evidence supports its order or action, we look to see if the order was based on a consideration of all relevant factors." *City of El Paso*, 883 S.W.2d at 184; *Gulf States Utils. Co. v. Public Util. Comm'n*, 841 S.W.2d 459, 474 (Tex. App.—Austin 1992, writ denied). In other words, we must remand for arbitrariness if we conclude that the agency "'has not actually taken a hard look at the salient problems and has not genuinely engaged in

5

reasoned decision-making.'" *City of Waco*, 346 S.W.3d at 819–20 (quoting *Starr Cty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 356 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.)).

In reviewing fact-based determinations under this standard, we may not substitute our judgment for that of the agency but rather must determine whether, considering the reliable and probative evidence in the record as a whole, some reasonable basis exists in the record for the agency's action. *See* Tex. Gov't Code § 2001.174(2)(E); *Texas Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 105 n.60 (Tex. 2010). "Thus, the agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984). We presume that the agency's findings, inferences, conclusions, and decisions are supported by substantial evidence, and the burden is on the appellant to demonstrate otherwise. *See Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 791 (Tex. App.—Austin 2012, no pet.); *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex. App.—Austin 2006, pet. denied). We must affirm the agency's findings if they are supported by more than a scintilla of evidence. *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam).

## DISCUSSION

In its first issue, HHSC argues that the trial court erred in reversing HHSC's denial of the custom power wheelchair with an integrated standing feature because there was substantial evidence to support the decision. The single Conclusion of Law issued by the hearing officer and adopted by HHSC read as follows:

6

> Because mobile standers, power standing systems on a wheeled mobility device are not a benefit of Home Health Services and exceptional circumstances for DME were not met, the decision by THMP on September 12, 2013 to deny Appellant a Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system **WAS** in accordance with applicable law and policy; therefore, the agency's action is **SUSTAINED**.

*See* 1 Tex. Admin. Code § 357.5(c)(3)(B). HHSC cites Findings of Fact Nos. 5 and 12 as support for this conclusion. Findings 5 and 12 state:

> **Finding of Fact No. 5:** Appellant does not currently have a static stander for use at her home and was not evaluated for prior authorization of one.
>
> . . .
>
> **Finding of Fact No. 12:** TMHP did not dispute that Appellant met medical necessity criteria for a power wheelchair and static stander or that these items met DME criteria.

We disagree that these findings do—or can—constitute substantial evidence to support HHSC's determination that Lukefahr failed to establish that the recommended wheelchair would serve a specific medical purpose for her. *See id.* § 354.1039(a)(4)(D); Tex. Gov't Code § 2001.174(2)(E). Findings of fact themselves are not evidence, and while these findings are supported by evidence, there is no rational connection between these findings and the agency's conclusion. The fact that Lukefahr does not currently have a static stander and was not evaluated for one does not establish that an integrated stander is not medically necessary or would not serve a specific medical purpose. There is no requirement that Lukefahr be evaluated for, try, or request an alternative DME, such as a static stander, prior to authorization of the requested wheelchair. TMHP's internal exceptional circumstances policy requires—as to alternative DME—only that the

7

client provide a letter of medical necessity documenting alternative equipment that has been tried and failed *or has been ruled out*, with an explanation. HHSC argues that the fact that Lukefahr had never requested a static stander is evidence that she had not ruled it out. However, as discussed below, the letter of medical necessity signed by Lukefahr's physician and the testimony of Hays, Lukefahr's physical therapist, explained why a static stander had been ruled out. As for Finding of Fact No. 12, the fact that HHSC did not dispute that Lukefahr met the medical necessary criteria for a power wheelchair and static stander is simply an inverse statement of HHSC's decision to deny the recommended chair and consider authorization of a static stander instead if requested, not support for the decision.

The remainder of the findings of fact also fail to support the agency's decision. They were:

> **Finding of Fact No.1:** Appellant is a twenty six year female diagnosed with spastic quadriplegia, dystonia, and cerebral palsy. Appellant resides alone and requires assistance with all her activities of daily living from a personal caregiver.
>
> **Finding of Fact No. 2:** On or about March 14, 2013, TMHP received a request from Russell Medical for prior authorization of a Permobil C500 VS power wheelchair with an integrated standing feature and seat elevation system.
>
> **Finding of Fact No. 3:** Appellant is currently operating a Permobil C300 wheelchair with a seat elevation system, tilt/recline, and elevated leg rests features provided to her six years earlier.
>
> **Finding of Fact No. 4**: On March 21, 2013, TMHP notified Appellant and her provider of the denial of a Permobil C500 VS power wheelchair with integrated standing feature because Texas Medicaid does not cover mobile standers and the wheelchair model requested does not come without a power standing feature.
>
> . . .

8

**Finding of Fact No. 6:** Appellant was able to operate a Permobil C500 [VS] power wheelchair and all its integrated features, including the standing feature during her wheelchair evaluation.

**Finding of Fact No. 7:** On or about June 3, 2013, Appellant requested an exceptional circumstances review of the denial of the Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system from TMHP.

**Finding of Fact No. 8:** On June 27, 2013, Appellant's provider (Russell Medical) submitted clinical information to TMHP for consideration of exceptional circumstances for DME not covered under Texas Medicaid.

**Finding of Fact No. 9:** The HHSC Office of the Medical Director (OMD) reviewed Appellant's clinical information and determined that the client's condition did not meet the clinical criteria for the Exceptional Circumstances provision for a Permobil C500 VS power wheelchair with integrated standing feature. OMD concluded that the medical information failed to substantiate that the power standing feature and its associated components served a specific medical purpose for Appellant.

**Finding of Fact No. 10:** On September 12, 2013, TMHP notified Appellant and her provider of the denial of exceptional circumstances for a Permobil C500 VS power wheelchair with integrated standing feature because medical information submitted did not support that the power standing feature and its associated components served a specific medical purpose to meet exceptional medical circumstances for the Appellant.

**Finding of Fact No. 11:** The standing feature cannot be separated from the power wheelchair model requested (Permobil C500 VS).

As the trial court noted in its letter to counsel, of the twelve findings of fact, six (Nos. 2, 4, 7, 8, 9, and 10) merely recite the procedural history of the DME request.[4] Findings of

---

[4] Finding of Fact No. 9 also states that Lukefahr's condition did not meet "the clinical criteria for the Exceptional Circumstances provision for a Permobil C500 VS power wheelchair with integrated standing feature." However, there is nothing in the record that establishes what those clinical criteria are. Both nurses who testified on behalf of HHSC stated that there are no written criteria and that they did not know the criteria used by the physicians who made the determination to deny the wheelchair request.

Fact Nos. 1 and 3 describe Lukefahr's condition and current wheelchair, while Finding of Fact No. 6 states that she is capable of fully operating the requested wheelchair. And while Finding of Fact No. 11, stating that the standing feature cannot be separated from the requested wheelchair, provides support for the agency's decision to deny the entire wheelchair request once it determined to deny the standing feature, it does not provide any basis for the decision to deny the standing feature itself, the decision at issue here. None of the findings of fact reasonably relates to the reasons for the denial, as stated in TMHP's denial letter, discussed more fully below; the findings do not even mention the issue of whether a power wheelchair with an integrated standing feature would serve a specific medical purpose for Lukefahr, much less cite any evidence on that central issue. Thus, as with Findings of Fact Nos. 5 and 12, there is evidence to support these findings, but there is no rational connection between the findings of fact and the decision. Consequently, the evidence reflected in the findings does not constitute substantial evidence to support HHSC's determination that Lukefahr failed to provide documentation meeting the exceptional circumstances standard set out in Rule 354.1039(a)(4)(D) or to support the agency's decision to deny the wheelchair request. *See* 1 Tex. Admin. Code § 354.1039(a)(4)(D); Tex. Gov't Code § 2001.174(2)(E); *City of Waco*, 346 S.W.3d at 819–20. Moreover, to the extent the agency based its decision on these legally irrelevant findings of fact, the decision was arbitrary and capricious. *See City of El Paso*, 883 S.W.2d at 184 (holding that agency decision may be found arbitrary and capricious if it is based on legally irrelevant factors or if legally relevant factors were not considered); *CenterPoint Energy*, 212 S.W.3d at 400 (same).

10

HHSC also argues that there is substantial evidence in the record to support the agency's decision. Lukefahr contends that HHSC's decision is not supported by substantial evidence because HHSC conceded her medical need to stand and failed to refute her health care providers' opinion that a static stander would not meet her medical needs and that an integrated stander would serve a specific medical purpose for her treatment plan. We agree with Lukefahr.

TMHP's denial letter contained the following explanation for the denial:

> The papers sent did not show that you are able to tolerate standing for longer periods of time [than five minutes, three times a day using a posture control walker] and this limits your ability to benefit from standing. The papers sent did not show you are able to perform tasks over and over again using your arms against gravity. The papers sent show you also have problems with your muscle tone and muscle spasms and this limits the range in your arms and hands and ability to move and use your upper body. Because you are able to transfer yourself in and out of your wheelchair using a wheelchair seat elevator, you would be able to use a static stander to obtain any medical benefits that might be obtained from a standing program. The papers did not state why a static stander that you could transfer into and out of would not meet your medical needs. The papers sent do not show you have a muscle or nerve condition that gets increasingly worse as you get older. The review of the papers sent in show [sic] the main reason for requesting a standing power wheelchair was to help you progress at work. The main reason was not for the treatment of your medical condition.

These statements, however, are either irrelevant to the agency's determination or are factually incorrect assertions that are contradicted by the express language in Lukefahr's documentation and by the testimony concerning the documentation. We begin with the irrelevant statements. In its answers to interrogatories propounded by Lukefahr, HHSC stated that a showing that Lukefahr has a muscle condition that increasingly worsens with age was "not a requirement" for eligibility for the recommended wheelchair. In addition, Hays testified that although cerebral palsy

11

is by definition a nonprogressive disease process, over time the repeated use of the same muscle fibers that results from cerebral palsy causes weakness, apparent worsening, and loss of skills. As for the statements concerning Lukefahr's ability to perform tasks using her arms against gravity and the limited muscle strength and mobility in her arms and hands, which relate to the performance of ADLs, the agency provided a similar interrogatory answer stating that it was "not a requirement" that Lukefahr show she is able to perform ADLs while standing in the recommended wheelchair. Patricia Cannizzaro, a nurse employed by TMHP who was not involved in the decision to deny Lukefahr's request, also testified that this statement was not a criteria but merely reflected what the documentation showed. Further, Hays testified that Lukefahr was able to perform simulations of ADLs for fifteen minutes while standing in the recommended wheelchair during her evaluation.

The remainder of the assertions are misstatements or mischaracterizations of the documentation. The statement that the "main reason" for requesting a power wheelchair with an integrated stander is to enable Lukefahr to progress at work, and not for medical reasons, is not supported by a review of the entire documentation presented by Lukefahr. Donna Clayes, a nurse employed by HHSC who assisted in, but was not involved in making, HHSC's determination, testified that she and the reviewing physician determined that progress at work was the main reason for the request because the "first two paragraphs" of a document submitted by Russell, the DME provider, were about Lukefahr's vocational needs. However, the first two paragraphs, which were in the section entitled "Pertinent Information" that was obtained from the patient and caregiver report, consisted of twelve sentences and included only three sentences about Lukefahr's work situation. They stated that Lukefahr was working at a museum as a receptionist/tour guide, that she

12

could work as a librarian if she could access the shelves independently, and that she hoped to continue this work and progress in her profession with the ability to use a wheelchair with a power stander. However, later in the same document, under "Summary and Impressions," as well as in other documentation, including the letter of medical necessity, Lukefahr's care providers expressly addressed her medical need for the recommended wheelchair.[5] In fact, when asked to point out where else in the documentation there was discussion of Lukefahr's vocational needs, Clayes responded, "It's not . . . ah . . . focused thataway." In response to a similar question about indications that Lukefahr's request was work-related, Cannizzaro was unable to cite to any other references in the documentation related to work.[6] Thus, the statement in the denial letter and Clayes's and Cannizzaro's testimony concerning Lukefahr's "main" reason for the request are not supported by the evidence. More significantly, Finding of Fact No. 12 states that TMHP did not dispute that Lukefahr met the medical necessity criteria for a power wheelchair *and static stander*, and Clayes testified that Lukefahr's documentation supported a medical need to stand. Thus, HHSC conceded

---

[5] In addition to the primary diagnoses of cerebral palsy, spastic quadriplegia, and dystonia, the documentation and testimony established that Lukefahr suffers from secondary medical conditions from prolonged sitting in a wheelchair, including loss of bone density, bowel and bladder problems, and dysmenorrhea, as well as risk of contractures from the dystonia. The letter of medical necessity stated that Lukefahr needs to stand "numerous times throughout the day" to address these conditions.

[6] Cannizzaro at first testified that she thought the seating evaluation contained information related to the use of the wheelchair at work and why Lukefahr's current wheelchair was not meeting her needs. However, when asked to locate that information in the seating evaluation, she pointed only to statements relating to Lukefahr's need for the standing feature to perform ADLs in her kitchen and bath, and not to any statements relating to her need for the wheelchair at work. Similarly, as noted above, the letter of medical necessity stated that Lukefahr needs to be able to stand at work because of her medical need to stand "numerous time throughout the day," not so that she can progress at work.

Lukefahr's medical need to stand and effectively abandoned any reasons for the denial that dispute that need.[7]

The statement in the denial letter that the documentation did not show that Lukefahr could stand for longer than five minutes so as to benefit from standing is simply incorrect. The letter of medical necessity stated that she had "previously used a posture control walker to stand for up to 5 minutes, 3 times per day for weight bearing [but that] use of this device has become extremely difficult . . . ." The wheelchair assessment form completed by Russell, the DME provider, stated that with the power wheelchair with an integrated stander, Lukefahr "will be able to stand for 30+ minutes" and aid in "reduction of spasticity." Thus, Lukefahr's documentation expressly stated that she could stand for longer periods of time and benefit from standing. In fact, in her testimony, Patricia Cannizzaro conceded that this statement in the denial letter "may be a little incorrect." Further, the statement is contradicted by HHSC's acknowledgment that Lukefahr has a medical need to stand.

Finally, the statements that because Lukefahr could transfer into and out of her wheelchair using the wheelchair seat elevator, she "would be able to use a static stander . . ."—apparently contemplating an independent transfer to the static stander—and that "the papers did not state why a static stander . . . would not meet [her] medical needs" are belied by the

---

[7] In her testimony, Cannizzaro stated several times that a power chair without the integrated standing feature but with the tilt, recline, and leg elevation features could address Lukefahr's spasms, pain, and other medical issues. Given HHSC's concession of Lukefahr's medical need to stand, this testimony is irrelevant to the remaining issue of whether Lukefahr has a medical need for an integrated standing feature or whether a static stander will meet her medical needs. For the same reason, we do not find persuasive HHSC's argument that "other covered DME," such as a power wheelchair without an integrated standing feature, would meet Lukefahr's needs.

14

documentation Lukefahr provided. The letter of medical necessity stated that Lukefahr required moderate assistance to transfer to a static stander, that a separate stander would require her to have care provider assistance each time she used the device, that she did not have continuous access to caregivers, and that only an integrated stander would meet her medical needs. Thus, the statements in the denial letter reflect that HHSC's decision to deny Lukefahr's wheelchair request was made without regard for the statements contained in Lukefahr's documentation, that it was not based on a consideration of all relevant factors, that the agency did not take a "hard look" at Lukefahr's documentation and the issues before it or "'genuinely engage[] in reasoned decision-making,'" and that its decision was therefore arbitrary and capricious. *City of El Paso*, 883 S.W.2d at 184; *City of Waco*, 346 S.W.3d at 819–20 (quoting *Starr Indus. Servs.*, 584 S.W.2d at 356); *CenterPoint Energy*, 212 S.W.3d at 400; *Gulf States Utils.*, 841 S.W.2d at 474.

HHSC asserts repeatedly that Clayes and Cannizzaro testified that a static stander would meet Lukefahr's medical needs. However, we have found no such testimony in the record. Clayes testified that (1) Lukefahr's documentation "supported a standing program" but did "not speak to the specific component and the need for the . . . the stander to be part of a wheelchair," (2) she did not see anything in the documentation that indicated a specific medical need "for a stander as being a component of a power wheelchair," and (3) the documentation "justifie[d] standing" but not "why that stander needs to be part of a wheelchair." Similarly, Cannizzaro testified that (1) "the information submitted didn't really indicate that [Lukefahr] couldn't use a static stander," (2) the documentation "didn't indicate why a static stander couldn't meet [Lukefahr's] needs," (3) "there was no information that was provided that indicated that [Lukefahr] had a medical

15

need to stand at work," and (4) that the information "did not indicate that there was a medical purpose for the standing feature." And when asked directly if she thought a static stander would be effective for Lukefahr, Cannizzaro replied, "There was no documentation in the information that was submitted that ruled out why a static stander could not meet her needs." Thus, neither nurse testified that a static stander *would* meet Lukefahr's medical needs; in fact, they both testified that they did not make the determination of whether a power wheelchair with an integrated standing feature would meet a specific medical need for Lukefahr, that the physicians determine whether an item will meet a specific purpose, and that they did not know the criteria used by the physicians. Rather, they testified only to the fact that the physicians had determined that Lukefahr's documentation did not support a medical need for an integrated stander.

The record shows, however, that both the documentation and the testimony of Hays explained Lukefahr's medical need for an integrated standing feature and why a static stander would not address her specific medical needs. The letter of medical necessity stated that Lukefahr had "a medical . . . need to stand numerous times throughout the day, both at home and in the community," that she needed "ongoing access to standing . . . to avoid the secondary medical complications that result from prolonged wheelchair sitting," and that neither her current "posture control walker nor a static stander" would "address all of [her] medical . . . needs." In addition, Hays explained why Lukefahr needs an integrated standing feature to address her dystonia. She explained that spasticity means high muscle tone such that the muscles never relax, causing pain. Spastic quadriplegia means spasticity in all four extremities and the trunk. She described dystonia as an "extreme form of spasticity that twists and contractures or tightens [the] muscles" and limits function more than the

16

ususal spasticity. She further explained that dystonia causes Lukefahr pain both from the tightening of the muscles and by exacerbating her chronic low back pain caused by prolonged sitting. In addition, she testified that Lukefahr experiences respiratory problems resulting from spasticity of the diaphragm. She described dystonia as somewhat like a boa constrictor wrapping itself around one's arms and legs and climbing up to the trunk. Hays and Lukefahr testified that Lukefahr's dystonia occurs several times a day; that she never knows when it will "kick in"; that the only thing that helps is standing; that if she can start standing when the dystonia begins, she can "stop it in its tracks"; and that standing also stops the back pain and respiratory compromise that come with the dystonia. Hays testified that the power wheelchair with an integrated standing feature was medically necessary for Lukefahr, in particular because of her dystonia.

HHSC offered no evidence at the hearing to contradict the documentation and testimony provided by Lukefahr that the recommended wheelchair would meet a specific medical purpose for her. There is no evidence in the record to dispute the attestation of Lukefahr's physician in the letter of medical necessity that she "has a medical need to stand numerous times throughout the day" and that a static stander cannot provide "the ongoing access to standing that she requires . . . ." In particular, HHSC offered no evidence to contradict Lukefahr's evidence regarding her need for frequent standing during the day to address her dystonia and related medical issues. In fact, neither the denial letter nor the testimony of HHSC's witnesses addressed Lukefahr's medical needs related to her dystonia.[8]

---

[8] The denial letter listed dystonia among Lukefahr's diagnoses, and Cannizzaro testified that she did not know whether dystonia is progressive and that Lukefahr did not provide any information indicating that it is. However, neither the letter nor HHSC's witnesses refuted Lukefahr's evidence concerning her medical issues related to her dystonia and her need for the integrated standing feature

HHSC argues that the recommendation of Lukefahr's physician is not controlling and that the State also has a role in determining what equipment is medically necessary. We agree that "the treating physician is not the sole arbiter of medical necessity . . . ." *See Moore v. Reese*, 637 F.3d 1220, 1248 (11th Cir. 2011). However, HHSC had the burden of proof at the fair hearing. *See* 1 Tex. Admin. Code § 357.9 (providing agency or its designee bears burden of proof by preponderance of evidence in fair hearing). In response to the treating physician's recommendation, the State must present its own evidence of medical necessity and create a fact issue for the factfinder to decide. *See Moore*, 637 F.3d at 1261 (distinguishing facts in *Moore*, where State introduced "significant medical testimony by [a physician], who had reviewed [the treating physician's] recommendation, along with Moore's medical history and records" with facts in another case, where State presented no written evidence or testimony from physician to justify State's modification to treating physician's recommendation); *see also* 1 Tex. Admin. Code § 357.9. Here, HHSC presented no testimony from a physician or other health professional to contradict the documentary evidence and testimony of Lukefahr's care providers. It relied solely on a factually deficient denial letter and the testimony of two nurses who do not make determinations of medical necessity, could not explain the reasoning behind the agency's decision, and offered no opinion as to medical need.

HHSC also argues that an exceptional circumstances review must be supported by "a minimum of two articles from evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the requested equipment has been found to be safe and effective" and that the

to address these issues.

18

testimony established that Lukefahr did not provide such literature. This requirement is not contained in HHSC's promulgated rule providing for exceptional circumstances review. *See id.* § 354.1039(a)(4)(D). Rather, it is contained in TMHP's internal Electronic Operations Procedures Manual, which is not available to the public. In its letter denying Lukefahr's initial request for prior authorization of the recommended wheelchair, TMHP informed her of her right to appeal the denial by exceptional circumstances review and listed the documentation it required for the review, including evidence-based medical peer-reviewed literature. Lukefahr submitted two articles. One was a position paper by the Rehabilitation Engineering & Assistive Technology Society of North America (RESNA) entitled "RESNA Position on the Application of Wheelchair Standing Devices," which cited numerous other articles and studies and assessed the benefits of an integrated standing feature for a number of medical conditions, including spasticity, loss of bone density, and respiration and bowel issues. It stated that "[s]tanders integrated into wheelchair bases enhance the beneficial effects of standing since they allow for more frequent, random, and independent performance of standing than among persons who use standing devices outside of a wheelchair base." The other article, entitled "Load Distribution in Variable Position Wheelchairs in People with Spinal Cord Injuries," was a study that investigated the magnitude of load distribution during tilt, recline, and standing and concluded that all three could be considered as a means of weight shifting for wheelchair users to decrease the potential for skin breakdown, or pressure sores, but that only standing also reduced pressure on the back.

Cannizzaro testified that these articles did not meet the requirement that the client submit evidence-based medical peer-reviewed literature that supports the information in the letter

19

of medical necessity and indicates why Medicaid-covered equipment cannot meet the client's medical needs. She stated that peer-reviewed articles are published in medical journals, are reviewed by the author's peers, and are categorized as Levels 1 through 4. She explained that Level 1 articles are on studies that are randomly controlled, large, prospective, and controlled for bias; Level 2 refers to small studies that have not been replicated; and Levels 3 and 4 articles present case studies, anecdotal reports, or surveys and are not controlled for bias. She testified that the RESNA paper "probably falls in that Level 3" because it is a "collection of the articles," contains "opinion of professionals in that field," is "not necessarily evidence-based," and most of the articles it cited are "probably a Level 3 or lower." She added that the language of the requirement for medical literature indicates that "higher level" articles are required. She testified that the RESNA article stated that an integrated stander could help with "certain things," but that "the underlying evidence is not necessarily there," and "it doesn't really control for bias." As for the article on load redistribution, Cannizzaro testified that although it was evidence-based, peer-reviewed, and prospective, it reported on a small study that was limited to load redistribution to prevent pressure sores and did not address Lukefahr's other medical conditions. Clayes testified that they had found no evidence-based, peer-reviewed medical literature that addresses all of Lukefahr's medical conditions specifically related to the standing feature on a wheelchair.

HHSC argues for the first time in its second reply brief that Lukefahr's failure to provide the required evidence-based medical peer-reviewed literature alone justifies denial of Lukefahr's request for an integrated stander. We cannot agree. Initially, we observe that there is nothing in the record to indicate that the denial of Lukefahr's request was based on HHSC's

20

determination that she had failed to submit adequate medical literature. There is no finding of fact or conclusion of law that refers to or is based on the medical literature requirement or Lukefahr's failure to meet it. Nor did the denial letter include any such reference. Clayes and Cannizzaro repeatedly emphasized that determinations of exceptional circumstances must be made on a "case-by-case basis," and Clayes stated, "There can't be things to look for clinically because it's a case-by-case determination. Each client is unique." HHSC's denial of Lukefahr's request, to the extent it was based on the ground that she did not submit two "Level 1" evidence-based, peer-reviewed medical articles addressing the effectiveness of an integrated stander for her unique combination of medical conditions, does not reflect that the agency engaged in reasoned decision-making in light of the documentation and testimony of Lukefahr's care providers, the factually inaccurate and irrelevant reasons contained in the denial letter, HHSC's failure to offer any evidence to dispute Lukefahr's evidence at the fair hearing, and its reliance on an unpublished internal policy not promulgated through rulemaking procedures that include public comment.[9] *See* Tex. Hum. Res. Code §§ 22.019(b) (providing that changes in HHSC policy shall be adopted in accordance with rulemaking provisions of Government Code Chapter 2001), 32.021(c) (providing that HHSC commissioner shall adopt necessary rules for proper and efficient operation of medical assistance program); *City of Waco*, 346 S.W.3d at 819–20; *Starr Indus. Servs.*, 584 S.W.2d at 356.

---

[9] Cannizzaro testified that the requirement for medical literature is contained in the operations manual and "has nothing to do with policy." However, the requirement for literature is contained in the section on "Exceptional Circumstances (DME)" under the heading "Policy Overview." The Exceptional Circumstances section also contains a subsection with the heading "Policy Profile," refers to criteria that apply to "this policy," and lists the medical policies that apply to "this program policy."

21

On the facts before us, considering the reliable and probative evidence as a whole, we conclude that there was no more than a scintilla of evidence to support HHSC's decision, that there is no reasonable basis in the record for the decision and no rational connection between the decision and the facts, and that reasonable minds could not have reached the conclusion that the agency must have reached to justify its decision. *See* Tex. Gov't Code § 2001.174(2); *City of Waco*, 346 S.W.3d at 819–20; *Texas Indus. Energy Consumers*, 324 S.W.3d at 105 n.60; *Mireles*, 9 S.W.3d at 131; *Charter Med.-Dall., Inc.*, 665 S.W.2d at 453; *see also* 1 Tex. Admin. Code § 357.5(c)(3)(A) (requiring hearing officer to make decision based on evidence presented at hearing). We therefore hold that HHSC's decision was not supported by substantial evidence and was arbitrary and capricious, that HHSC abused it discretion in denying Lukefahr's wheelchair request, and that Lukefahr's substantial rights have been prejudiced as a result.[10] *See* 1 Tex. Gov't Code § 2001.174(2)(E), (F); *Texas Health and Human Servs. Comm'n v. Antoine Dental Ctr.*, 487 S.W.3d 776, 797 (Tex. App.—Texarkana 2016, no pet.) (holding that HHSC's decision prejudiced Medicaid provider's substantial rights where commissioner's decision was in violation of Government Code section 2001.058(e)); *National Media Corp. v. City of Austin*, No. 03-12-00188-CV, 2014 Tex. App. LEXIS 9530, at *3 (Tex. App.—Austin Aug. 27, 2014, no pet.) (mem. op.) (concluding that city acted arbitrarily and capriciously when it denied permit based on requirements that had not been previously proposed by board of adjustment); *Patton v. Employees Ret. Sys.*, No. 03-07-00170-CV, 2007 Tex. App. LEXIS 9901, at *22 (Tex. App.—Austin Dec. 19, 2007, no pet.) (mem. op.) (holding that board abused discretion and acted arbitrarily and

---

[10] HHSC did not assert below and does not argue on appeal that Lukefahr had no substantial right at stake and has waived any argument to that effect. *See* Tex. R. App. P. 38.1(i).

capriciously in relying on retired employee's private sector wages to terminate benefits); *Bexar Cty. Civil Serv. Comm'n v. Casals*, 63 S.W.3d 57, 60–62 (Tex. App.—San Antonio 2001, no pet.) (holding that petitioner's substantial rights were prejudiced when civil service commission exceeded its authority by refusing to enter order required by commission rule); *Starr Indus. Servs.*, 584 S.W.2d at 356 (concluding that where order was based on reason not listed in statutory authority, significant part of board's action was arbitrary and capricious and entry of order prejudiced permit applicant's substantial rights, and remanding to agency). We overrule HHSC's first issue.[11]

## CONCLUSION

We affirm the judgment of the trial court.[12]

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: October 6, 2016

---

[11] In its second issue, HHSC agues that the decision was not arbitrary and capricious because the decision was supported by findings of fact, an argument also included in its first issue that we have already addressed. In its second issue, HHSC also argues that the decision was not in violation of Lukefahr's due process rights because she received all required due process during the fair hearing and subsequent administrative review. Because our resolution of HHSC's first issue is dispositive, we do not reach this argument. *See* Tex. R. App. P. 47.1.

[12] HHSC has pending a motion to strike material outside the record, asking that we not consider a hearing transcript attached as Appendix B to Lukefahr's sur-reply brief. We grant the motion and have not considered Appendix B in our decision.